UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DENNIS J. T.,<br><br>         Plaintiff,<br>     v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>         Defendant. | Case No. 2:23-cv-00448-BFM<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.     PROCEDURAL HISTORY

Plaintiff Dennis J. T.[1] applied for a period of disability and disability insurance benefits, alleging disability that commenced on June 4, 2021. (Administrative Record ("AR") 17, 145-46.) Plaintiff's application was denied at the initial level of review and on reconsideration, after which he requested a hearing in front of an Administrative Law Judge. (AR 106-07.) The ALJ held a hearing and heard from Plaintiff and a vocational expert (AR 31-57), after which the ALJ issued an unfavorable decision. (AR 17-27.) She found at step two of the

---

[1] In the interest of privacy, this Memorandum Opinion and Order uses only the first name and middle and last initials of the non-governmental party in this case.

disability analysis[2] that Plaintiff has several severe impairments: post-trigger finger release; post-traumatic stress disorder; and degenerative disc disease of the lumbar spine. (AR 19.) Relevant to Plaintiff's claims in this Court, the ALJ concluded that Plaintiff's glaucoma, while medically determinable, was a nonsevere impairment. (AR 20.) At step three, the ALJ concluded that Plaintiff's conditions do not meet or medically equal the severity of any impairment contained in the regulation's Listing of Impairments—impairments that the agency has deemed so severe as to preclude all substantial gainful activity and require a grant of disability benefits. (AR 20); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.

Because Plaintiff's impairments were not severe enough to require a grant of benefits at step three, the ALJ proceeded to consider at step four whether Plaintiff's residual functional capacity—what Plaintiff can do despite his limitations—was such that he is able to perform his past relevant work. (AR 25.) The ALJ concluded Plaintiff could not return to that work, but that he could perform other jobs in the national economy. (AR 26.) The ALJ thus found Plaintiff to be not disabled and denied his claim. (AR 26-27.) The Appeals Council denied review of the ALJ's decision. (AR 1-5.)

Dissatisfied with the Agency's resolution of his claim, Plaintiff filed a Complaint in this Court. He argues that the ALJ erred when she failed to properly assess the following: (1) Plaintiff's complex visual impairments; (2) the medical opinions of record; and (3) Plaintiff's subjective symptom testimony. (Pl.'s Br. at 4.) Defendant requests that the ALJ's decision be affirmed.

---

[2] A five-step evaluation process governs whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1). The ALJ, properly, conducted the full five-step analysis, but only the steps relevant to the issue raised in the Complaint are discussed here.

|     |     |
| --- | --- |
| 1   | **II. STANDARD OF REVIEW** |
| 2   | Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision |
| 3   | to deny benefits to determine if: (1) the Commissioner's findings are supported |
| 4   | by substantial evidence; and (2) the Commissioner used correct legal standards. |
| 5   | *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); |
| 6   | *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). |
| 7   | "Substantial evidence . . . is 'more than a mere scintilla.' It means—and only |
| 8   | means—'such relevant evidence as a reasonable mind might accept as adequate |
| 9   | to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) |
| 10  | (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th |
| 11  | Cir. 2014) (internal quotation marks and citation omitted). To determine |
| 12  | whether substantial evidence supports a finding, the reviewing court "must |
| 13  | review the administrative record as a whole, weighing both the evidence that |
| 14  | supports and the evidence that detracts from the Commissioner's conclusion." |
| 15  | *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998). |
| 16  |     |
| 17  | **III. DISCUSSION** |
| 18  | Plaintiff contends that the ALJ failed to properly evaluate both the nature |
| 19  | and the severity of his visual impairments, in light of the medical records and |
| 20  | his own testimony. For the reasons set forth below, the Court agrees and on that |
| 21  | basis concludes that the ALJ's decision must be reversed. Having reached that |
| 22  | conclusion, the Court declines to consider Plaintiff's contentions relating to his |
| 23  | other, non-vision-related impairments. |
| 24  |     |
| 25  | **A. The ALJ's Analysis of Plaintiff's Vision Issues** |
| 26  | At step two, the ALJ found Plaintiff's medically determinable impairment |
| 27  | of glaucoma to be nonsevere "because it is only a slight abnormality and does |
| 28  |     |

3

1    not affect [him] more than minimally." (AR 20 (citing AR 955).) She proceeded
2    through the five-step analysis, but only briefly touched on Plaintiff's vision
3    issues in the later part of her decision. Plaintiff contends this is reversible error.
4    Defendant responds that the ALJ appropriately assessed Plaintiff's vision
5    impairment to be nonsevere. In any event, Defendant argues, even though the
6    ALJ deemed Plaintiff's vision impairment to be nonsevere, she nevertheless
7    "considered the impact of Plaintiff's vision impairment beyond step two," and
8    "continued to address [Plaintiff's vision issues] at further steps" "including in
9    combination with stress." (Def't's Br. at 4.) As such, Defendant contends that
10   any error at step two would be harmless. (Def't's Br. at 4.) Plaintiff has the
11   better argument.

   1.   **The ALJ erred in her consideration of Plaintiff's vision-related issues at step two.**

14   At step two of the five-step sequential inquiry, the Commissioner must
15   decide whether the claimant has a medically severe impairment or combination
16   of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of
17   impairments is nonsevere only if it is "a slight abnormality that has no more
18   than a minimal effect on an individual[']s ability to work." *Smolen v. Chater*, 80
19   F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks and citation omitted).
20   The inquiry at step two is not a high barrier; it is "'a de minimis screening
21   device" designed to "dispose of groundless claims.'" *Edlund v. Massanari*, 253
22   F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1290).
23   Here, it is doubtful that the ALJ properly concluded that Plaintiff's vision
24   impairments—which *include* glaucoma but are not limited to that condition—
25   are only slight abnormalities and have no more than a minimal effect on his
26   ability to work. Indeed, the record reflects that Plaintiff's vision issues were
27   among the reason he stopped working in 2021. Plaintiff testified that job-related
28

stress caused him to start seeing spots and exacerbated his glaucoma and other vision issues. (AR 41.) He was told by his doctor that being in a stressful work environment would "cause [him] to go blind sooner than later." (AR 47.) His vision issues also affect his daily life: for example, Plaintiff testified that he shops in the daytime because it is easier to see the labels and he does not drive at night because he cannot see. (AR 50.) And his vision issues also affect the options for treating his other medical issues: for example, he cannot receive steroid treatment for his physical pain because steroids would exacerbate his vision problems. (AR 49.) Plaintiff acknowledges that his vision "leveled out after about a year of not working," but argues that it is not known whether putting him back into a working situation would trigger more visual loss. (Pl.'s Br. at 16-17.) He submits that there is no evidence he could return to a work environment without a return of his symptoms. (Pl.'s Reply Br. at 8.)

The ALJ found Plaintiff's glaucoma is only a slight abnormality with no more than a minimal effect on Plaintiff's ability to work. As support for that conclusion, the ALJ cited a single page of a November 30, 2021, ophthalmological treatment note. (AR 20 (citing AR 955).) The ALJ did not explain how the cited page supports her finding, and the Court does not see how it does. The cited page lists issues "not addressed today," which included Plaintiff's "Advanced POAG [primary open angle glaucoma]" in the right and left eyes, his cataracts in both eyes, and his dry eye syndrome. (AR 954-55.) The fact that a medical issue was not addressed at a particular appointment by a particular specialist is weak support for a conclusion that that issue is nothing more than a "slight abnormality."

Looking at the complete treatment record for that date (AR 952-57) and not the single page the ALJ cited, the ALJ's conclusion is even more untenable. As noted in that record, Plaintiff reported seeing occasional flashes of light, and

5

it was indicated that his vision is "affected by his work/stress." (AR 952.) The provider noted that Plaintiff's "CSCR [central serous chorioretinopathy] is recurrent and the subretinal fluid has not resolved with conservative management." (AR 954.) He recommended that Plaintiff "avoid any stressful activities, including work, as able." (AR 954.) He also noted "an area of leakage in the [superonasal] macula between the nerve and fovea," which may be "amenable to a focal laser treatment" if not resolved by the next appointment. (AR 954.) Also noted was a statement that the optic nerve head was "[c]upped [both eyes] with trace sup/inf rim [right eye], trace rim [left eye], pallor [both eyes] with visible laminar fenestrations." (AR 953-54.) There are other medical entries in this record, entries of unclear significance (to this Court at least), but if those entries somehow support the ALJ's conclusion that Plaintiff's glaucoma is only a "slight abnormality" that did not meet the low bar at step two, the ALJ had an obligation to make that clear.

In short, substantial evidence does not support the ALJ's given reason for concluding that Plaintiff's vision impairments were not severe. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Step two error is sometimes harmless, and Defendant argues that it is harmless here. Under governing law, an ALJ must consider the impact of all impairments on a claimant's residual functional capacity, whether they were deemed severe or not severe at step two. *See* 20 C.F.R. § 404.1545(a)(1)-(2), (e); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Put another way, impairments do not drop out of the analysis simply because they are deemed nonsevere at step two. Defendant argues that any error at step two is harmless here, because the ALJ "continued to address [Plaintiff's vision issues] at further

steps when assessing Plaintiff's subjective allegations . . . and the extent of the treatment Plaintiff received." (Def't's Br. at 7.)

Defendant is right on the law; step two error can be harmless if, after step two, the ALJ properly considers all severe and nonsevere impairments as she moves through the analysis. But as a factual matter, that is not what happened in this case. Here, the ALJ gave Plaintiff's vision impairments short shrift throughout her analysis. After step two, the ALJ makes only two mentions of vision-related impairments, one, in a comment about Plaintiff's subjective testimony and two, in a summary of the records of one of Plaintiff's doctors. Both of these, however, the ALJ mishandled. And there is a wealth of other vision-related information in the record that the ALJ either overlooked or did not properly consider. Each of these points is covered in more details in the following sections, but the bottom line is clear. Whether framed as the reason that the step two error just described is not harmless, or as an independent error in conducting the analysis at steps three, four, and five, the ALJ did not discharge her duties to properly evaluate Plaintiff's vision-related issues and that the error requires remand.

### 2. Plaintiff's Subjective Symptom Testimony

Defendant first points to the fact that the ALJ considered Plaintiff's testimony about his vision-related issues, and argues that this discussion is a basis for calling any step two error harmless. The ALJ did briefly mention Plaintiff's testimony relating to his vision, but that does not mean she properly considered it.

Plaintiff testified at the hearing that he stopped working in 2021 because job stress was causing Plaintiff to see "spots" in his eyes. (AR 41.) The spots, he described, were "more like an eclipse." (AR 41.) When he went to the eye clinic, he was told he had to be off work completely. (AR 41.) Although he had been

7

1  approved for a "reasonable accommodation" to help with his vision problems, his
2  supervisor "did not get the equipment in a timely manner." (AR 41.)

3      The spots have gone away since Plaintiff stopped working, but his doctor
4  informed him that if he is in a work environment, the stress will cause him "to
5  go blind sooner than later." (AR 46-47.) He continues to take eye drops to treat
6  his glaucoma; the drops keep the pressure down. He cannot receive any type of
7  steroid injection for the pain in his hands or back because such injections would
8  also cause the eye spots to return. (AR 49.)

9      In terms of the impact of his vision on his daily life, Plaintiff testified that
10 when he shops (which is not often) he does it in the daytime so that he can see
11 the labels better. (AR 50.) He does not drive at night because he cannot see. (AR
12 49, 50.) He reported to the Agency that he is "able to read safety signs in the
13 daytime" but does not go out at night because of "decreased visibility." (AR 61.)
14 He also asserted that he would have difficulty following written instructions due
15 to his vision issues. (AR 61.)

16     The only part of Plaintiff's account that made it into the ALJ's decision
17 was a brief note that Plaintiff said he does not drive at night "because of his poor
18 vision," and that "he does go shopping on his own, but only during the daytime."
19 (AR 22.) After her incomplete summary of Plaintiff's testimony, the ALJ
20 declined to incorporate Plaintiff's testimony into the residual functional
21 capacity analysis, noting that his testimony was "not entirely consistent with
22 the medical records." (AR 22.) She did not, however, discuss any particular
23 medical record that conflicted with Plaintiff's testimony related to his visual
24 limitations.

25     In her characterization of Plaintiff's testimony regarding limits to his
26 daily activities because of his vision, in her omission from her summary of other
27 relevant vision-related testimony from Plaintiff, and in her reasoning for
28

discounting Plaintiff's testimony, the ALJ erred.

Where a claimant testifies about subjective medical symptoms, an ALJ must evaluate such testimony in two steps. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could "reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted).

Second, if the claimant meets that first standard and there is no evidence of malingering, the ALJ can reject the claimant's testimony only by offering "specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation marks omitted). An ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). At the same time, when an ALJ rejects a claimant's testimony, she must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). General or implicit findings of credibility will not suffice; the ALJ "must show [her] work." *Smartt*, 53 F.4th at 499; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

The sufficiency of the explanation should be judged in light of its purpose—ensuring that this Court's review is "meaningful." *Brown-Hunter*, 806 F.3d at 489. That is, the explanation must be "'sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* at 493 (citation omitted). A "reviewing court should not be

9

1 forced to speculate as to the grounds for an adjudicator's rejection of a claimant's
2 allegations of disabling pain." *Bunnell*, 947 F.2d at 345-46.

3 Judged by that standard, the ALJ inadequately explained how she
4 considered Plaintiff's vision-related testimony. Her summary omitted some of
5 the most important information conveyed by Plaintiff. Likewise, her conclusory
6 statement that Plaintiff's testimony was not entirely consistent with the
7 medical record does not discharge her duty to provide sufficiently specific
8 reasons under *Brown-Hunter* for rejecting Plaintiff's testimony. Again, whether
9 framed as the reason that the step two error is not harmless or as an
10 independent error affecting the ALJ's analysis at step three and beyond, what
11 is clear is that the ALJ's explanation is not sufficient to allow the Court to
12 conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective
13 symptom testimony. That error requires remand.

### 3. Objective Medical Records

Defendant also argues that the step two error is harmless because the ALJ properly considered the "extent of the treatment Plaintiff received." (Def't's Br. at 7.) It is unclear what treatment exactly Defendant is referring to, but there is only one other reference in the ALJ's decision to any medical evidence relating to vision impairments. That one reference fails to support Defendant's argument. Moreover, the ALJ left a wealth of vision-related evidence, including an opinion regarding Plaintiff's functional visual limitations, entirely unmentioned. Both problems are discussed in turn.

#### a. Dr. Karamlou

The only vision-related medical record explicitly mentioned by the ALJ is the one provided by the internal medicine consultative examiner Dr. Karamlou. The ALJ noted that Dr. Karamlou found that Plaintiff suffered from glaucoma and blurry vision. She also noted his recommendation of work-related

10

limitations related to that condition—that Plaintiff's blurry vision meant he should not climb ladders or work at heights. (AR 23.)

The ALJ summarized Dr. Karamlou's opinion and recited the limitations he assessed, but that was it. She did not explain how persuasive she found his opinion with respect to Plaintiff's visual (or any other physical) limitations. She did not include his recommended limitations in her residual functional capacity assessment; neither did she explain why she was disregarding them. It appears the ALJ simply forgot to circle back and conduct any analysis with respect to Dr. Karamlou's opinion.

This was error. Under governing regulations, an ALJ is required to articulate how persuasive she finds the medical opinions in a claimant's record. 20 C.F.R. § 404.1520c(b). In doing so, the ALJ must consider and explain how she considered the two "most important factors"—the "supportability" and the "consistency" of each opinion. 20 C.F.R. § 404.1520c(b)(2). Supportability is the extent to which a medical source "supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency asks whether the medical expert's opinion or finding is consistent with "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). There are other factors that an ALJ must consider, including the medical source's relationship with the claimant and frequency of examinations, among others, though the failure to explain how these other factors were considered is not necessarily error. *See* 20 C.F.R. § 404.1520c(b)(2). What *is* error is for an ALJ to reject a medical opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792.

Here, the ALJ's treatment of Dr. Karamlou's opinion does not satisfy the

test. The ALJ did not deem it unsupported, nor did she find it inconsistent with other records. She simply failed to state how she considered Dr. Karamlou's opinion. And because Dr. Karamlou supported a significant limitation in Plaintiff's residual functional capacity based on his vision-related impairments, the error was not harmless.

In sum, the ALJ erred in relying on one page of the November 30, 2021, ophthalmological treatment note as a basis for concluding that Plaintiff's vision-related impairments were nonsevere, erred in evaluating Plaintiff's subjective testimony about his vision, and erred in failing to articulate how she considered the opinion of the one doctor who proposed vision-related limitations on Plaintiff's ability to work. There is simply no evidence to support Defendant's contention that the ALJ properly considered Plaintiff's vision-related impairments after step two of the analysis such that any error was harmless. The error requires remand for further proceedings.

b. Other vision-related evidence in the record: the State agency consultants

Because the Court orders further proceedings, it will briefly note the considerable weight of other vision-related evidence that the ALJ did not address.

For example, there were two State agency consultants who reviewed the record and discussed Plaintiff's vision-related issues. The ALJ deemed the opinions of the State agency consultants to be persuasive:

> [T]he undersigned has taken into consideration the assessments of the State agency *medical/psychological* consultants on initial review and on reconsideration who opined [Plaintiff] can perform up to the equivalent of the medium exertional level with mild to mostly moderate *mental* functional limitations. The undersigned finds the assessments of these State agency consultants are persuasive as they are well supported by the objective medical evidence and are consistent with the record as a whole.

(AR 24 (emphases added).) But the ALJ's decision did not mention either consultant's vision-related opinions, nor did it incorporate those consultant's views of workplace limitations in her analysis of Plaintiff's residual functional capacity. It is ambiguous whether the ALJ's determination that those consultants' "medical/psychological" opinions are persuasive included their views on Plaintiff's visual conditions or included only their mental functional limitations. But either the ALJ overlooked the consultative examiners' discussions of Plaintiff's vision issues or she decided not to credit those portions of their opinions without explaining why—and either one would be error.

On initial review, Dr. Lane noted Plaintiff's glaucoma with poor night vision and assessed "some visual limitations." (Def't's Br. at 6 n.4 (citing AR 66-67).) Specifically, Dr. Lane reviewed Plaintiff's medical records, which reflected complaints of "foggy vision [both eyes], floater or black central spot w/a little flash [left eye]." (AR 66.) The black spot disappeared at one visit but recurred at a subsequent visit. (AR 66.) Dr. Lane found Plaintiff's depth perception and accommodation[3] in his left eye to be limited. He therefore opined that Plaintiff "can do jobs that require up to occasional depth perception, accommodation. Can work in areas that are well lighted only." (AR 66.) The ALJ never specifically mentioned these findings; she did not find them not supported or inconsistent, nor did she include Dr. Lane's workplace limitations in her determination of Plaintiff's residual functional capacity.

Dr. J. Virk, M.D., offered his views on reconsideration. He noted that Plaintiff's glaucoma was a primary impairment, and severe, and that Plaintiff had "fluctuating vision." (AR 78-79.) Dr. Virk further noted that in December

---

[3] Visual accommodation is the ability of the lens to maintain a clear image or focus on an object as its distance varies. http://www.en.wikipedia.org/wiki/accommodation_(vertebrate_eye).

13

1  2020, Plaintiff was assessed with recurrent central serous chorioretinopathy in
2  his left eye, advanced primary open angle glaucoma with "excellent" interocular
3  pressure in both eyes, a mild cataract in both eyes, and dry eye syndrome. (AR
4  76.) He also pointed out Plaintiff's report that more fluid had been building up
5  behind his eyes. (AR 73.)

6  Dr. Virk's findings reflect that he had at least seen Dr. Karamlou's recent
7  consultative examination report, as he took note of Dr. Karamlou's finding of
8  blurry vision in the right eye due to glaucoma. (AR 77.) But, in summarizing
9  Dr. Karamlou's assessed limitations, Dr. Virk did not mention Dr. Karamlou's
10 opinion that Plaintiff should not work at heights or climb ladders due to his
11 blurry vision. (AR 74.) Instead, Dr. Virk stated that Plaintiff had "[v]ision
12 limitation only at the initial level" of review, and that the most recent
13 ophthalmology examination in September 2021 showed Plaintiff "felt" his vision
14 has improved.[4] (AR 77 (citing AR 484).) Notably, Dr. Virk also commented that
15 Dr. Karamlou's medical source statement "appears to be more appropriate"
16 than Dr. Lane's source statement on initial review. (AR 77.) Despite so finding,
17 Dr. Virk did not address the functional limitations assessed by Dr. Karamlou
18 based on Plaintiff's glaucoma and vision issues.

19 The ALJ was not required to credit Dr. Lane's restrictions any more than
20 she had to credit Dr. Karamlou's—but she is required to show her work. It is
21 problematic, then, that the ALJ made general statements crediting the agency
22 medical and psychological reviewers (which would include medical reviewers
23 Dr. Lane and Dr. Virk), and yet failed to either incorporate the visual
24 limitations assessed by Dr. Lane in Plaintiff's residual functional capacity or

---

[4] Plaintiff's "feeling" that his vision had improved does not necessarily indicate that his vision issues were cured or even that there had been actual improvement overall and Dr. Virk did not point to anything in that record demonstrating diagnostic improvement.

14

explain why she found that component of Dr. Lane's decision to not be persuasive. And with Dr. Virk appearing to credit Dr. Karamlou, and the ALJ appearing to credit Dr. Virk, it is all the more troubling that the ALJ did not explain why Dr. Karamlou's limitations were not included in the analysis of Plaintiff's residual functional capacity.

The ALJ should review the medical opinions of these three doctors carefully on remand.

### c. Other evidence: medical records

Other significant vision-related evidence was not considered by the ALJ. As discussed above, the record contains treatment records from Plaintiff's ophthalmologist. The ALJ pointed to a single page of those records, but did not address the record as a whole. *See supra*. Moreover, just as glaucoma is not Plaintiff's only diagnosed visual condition, that November 30, 2021, treatment note is far from the only vision-related medical record. To note a few:

- On November 16, 2020, prior to the June 4, 2021, alleged onset date, Plaintiff's treating physician stated that Plaintiff should limit his stress level because his visual condition, central serous chorioretinopathy, is affected by stress. (AR 297.)
- On February 22, 2021, glaucoma was listed as an active issue and noted to be "already functionally limiting" for Plaintiff. (AR 251-52; *see also* AR 263, 324.)
- On April 23, 2021, a treatment note from an ophthalmological provider found that Plaintiff is unable to drive at night, and stated that Plaintiff's attempts to get accommodations at work to reduce the bright lights had been unsuccessful. (AR 235.)
- Between June and August 2021, Plaintiff's visual acuity fluctuated, as did the pressure in his eyes, with a high pressure of 22 in his left eye

in August 2021, and readings of between 10 and 14 at other times.[5] (Pl.'s Br. at 7 (collecting citations).)

There is great reason to doubt that these issues miraculously disappeared when Plaintiff stopped working in June 2021. For instance:

- On September 18, 2021, Dr. Buckley, Plaintiff's treating psychiatrist, stated that there is a "record of deterioration of [Plaintiff's] vision with each new bout of stress" at work, and opined that any stressor puts Plaintiff at risk of vision loss and eventual blindness.[6] (AR 419-20.)
- A September 28, 2021, treatment note from Dr. Lu, Chief of Ophthalmology at the Long Beach VA Medical Center, reflects advanced primary open angle glaucoma in both eyes and states that "glaucomatous damage likely limits vision" in Plaintiff's right eye, central serous chorioretinopathy limits vision in his left eye, and surgery may be indicated for pressure control. (AR 487.) Plaintiff was advised to limit steroid use and stress "as both can exacerbate" central serous chorioretinopathy, which already was affecting Plaintiff's left eye. (AR 487, 510, 518.)
- On December 4, 2021, treating psychiatrist Dr. Buckley stated that he had reviewed the ophthalmological treatment notes, which reflect a worsening "hot spot" in the left eye and leaks in the retinal fluid, and again opined that "stress and anxiety are unfortunately an exacerbating factor in the progression of retinal damage." (AR 949.)

An ALJ errs when she ignores significant probative evidence. *Hill v.*

---

[5] The significance of these numbers was not explained by either party.

[6] The ALJ's consideration of Dr. Buckley's September 2, 2022, opinion—an issue raised by Plaintiff—is not considered herein. (AR 24.) The ALJ considered only Dr. Buckley's non-vision related findings, and not any of these seemingly relevant and probative notes regarding the impact of stress on Plaintiff's vision.

16

*Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012). That error requires reversal where the failure to discuss evidence favorable to the claimant renders the residual functional capacity incomplete. *Id.* at 1162. An incomplete analysis of residual functional capacity affects the hypotheticals presented to the vocational expert which, in turn, undermines the ALJ's reliance on the vocational expert's testimony. *Id*. The ALJ should carefully consider the full breadth of the medical records relating to Plaintiff's vision condition on remand.

## B. Conclusion

Because remand is warranted for the above reasons, and because remand will require the ALJ reassess the medical evidence of record and Plaintiff's subjective symptom testimony, the Court declines to address Plaintiff's remaining issues. See *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground[s] for remand."). In performing the required five-step analysis on remand, the ALJ must abide by all regulations applicable to the consideration of, among other things, the medical evidence (including, if the ALJ determines it is necessary, testimony from a medical expert relating to Plaintiff's vision impairments), and Plaintiff's subjective symptom testimony.[7]

---

[7] In his opening brief, Plaintiff notes the ALJ's comment that Plaintiff's vision had improved and then cites to cases that mention the applicability of a closed period of disability. (Pl.'s Br. at 9, 17.) Plaintiff presents no argument that he is seeking a closed period of disability and the Court expresses no opinion as to whether a closed period of disability is warranted under the circumstances here.

17

## IV. REMAND FOR FURTHER PROCEEDINGS

Remand for further proceedings, rather than with instructions to calculate benefits, is appropriate because the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101, n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

## V. CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is **REVERSED** and this matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

DATED: September 7, 2023 _____
BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE